IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRUEY DUANE HICKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-19-203-TDD |
| | ) |
| FG MINERALS LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendant FG Minerals, LLC's Motion to Dismiss First Amended Complaint [Doc. No. 21], filed pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has filed a response [Doc. No. 22] in opposition to the Motion, which is fully briefed.[1] For the following reasons, the Court finds that the Motion should be granted.

### Factual and Procedural Background

This case concerns Plaintiff's overriding royalty interest in the production of sand under a mining lease granted by Sheila Lewis on real property located in Johnston County, Oklahoma. FG Minerals is an assignee of the lease and conducts mining operations on the property. FG Minerals has also acquired nearby properties, which Plaintiff alleges he was involved in identifying and testing under an agreement by which he would earn an overriding royalty interest on sand mined from those properties as well. Plaintiff does not identify a contract or describe specific terms of an agreement with FG Minerals. Plaintiff

---

[1] FG Minerals did not file a reply brief within the time limit set by LCvR 7.1(e).

instead claims that the lease and subsequent assignments entitle him to receive royalties on sand mined from adjoining properties that is processed on the leased land. He alleges that a plant was built on the Lewis property in 2008, that the plant began operating in 2009, and that he received the overriding royalty payments to which he was entitled on production and sales from the plant until March 2018. Plaintiff alleges that royalty payments ceased after FG Minerals purchased part of Lewis' property, induced her to amend the underlying lease,[2] and began transporting sand from other properties to be processed at the plant.

In April 2019, Plaintiff sued FG Minerals and Lewis in state court asserting claims for breach of contract and fraud. *See* Compl. [Doc. No. 2-2]. Plaintiff claimed that he had not received all overriding royalty payments to which he was entitled and that Defendants had engaged in conduct designed to deprive him of his royalty interest. FG Minerals timely removed the case to federal court in June 2019, invoking diversity jurisdiction under 28 U.S.C. § 1332 based on allegations that Lewis should be disregarded as a defendant because she was fraudulently joined to defeat diversity of citizenship. *See* Notice of Removal [Doc. No. 2], ¶¶ 9-11. By the Order of May 1, 2020 [Doc. No. 23], the Court determined that FG Minerals had established its claim of fraudulent joinder and dismissed Plaintiff's action against Lewis. Only his claims against FG Minerals remain pending.

FG Minerals first moved to dismiss the action shortly after removal, but Plaintiff amended his pleading and rendered the motion moot. *See* 9/17/19 Order [Doc. No. 19]. Plaintiff is now proceeding under the Amended Complaint [Doc. No. 20]. By the instant

---

[2] Allegations regarding lease amendments were added in an amended pleading, discussed *infra*.

2

Motion, FG Minerals seeks a dismissal of all claims against it: 1) breach of contract; and 2) civil conspiracy. *See* Am. Compl. at 34-37, ¶¶ 44-51, and 39-40, ¶¶ 63-66.

## Plaintiff's Allegations of Fact

The Amended Complaint is voluminous and has fourteen attachments, primarily copies of recorded instruments affecting Lewis' property and other properties. Mindful of the standard of decision, the Court accepts all factual allegations as true, and provides the following summary.

Henry McCabe and Truey Dale Hicks (Plaintiff's father) were businessmen with extensive experience in sand mining operations, and they began working together in 2004 to locate suitable land for mining sand to supply a glass manufacturing plant in Durant, Oklahoma. Plaintiff assisted his father to serve as landmen for acquiring tracts of property in Johnston County, and they targeted Lewis as a good prospect for granting a sand mining lease and allowing a sand processing plant to be located on her property adjacent to a state highway. Plaintiff's father negotiated with Lewis to obtain in February 2005 the Sand and Aggregate Mining Lease that is the subject of this case (hereafter, the "Lease"). It identifies Lewis as lessor and McCabe and Plaintiff as joint lessees, using the term "McCabe-Hicks" throughout the document to refer to them.[3]

---

[3] A partial copy of the Lease is Exhibit A to Plaintiff's pleadings. *See* Compl. [Doc. No. 2-2] at 22-23 (ECF page numbering); Am. Compl. attach. 1 [Doc. No. 20-1]. A complete copy appears in other exhibits as attachments to lease assignments, a written agreement, and an affidavit. *See, e.g.*, Compl. at 31-36 (ECF page numbering); Am. Compl. attach. 3 [Doc. No. 20-3] at 6-11, attach. 13 [Doc. No. 20-13] at 18-23 & 34-39, and attach. 14 at 7-12 (ECF page numbering). These copies will be cited collectively as "Lease."

3

Plaintiff alleges that his father and Lewis orally agreed she would receive certain advance payments and a royalty of $0.30 per ton of sand mined from her 160 acres and produced from a mining plant to be located on her property, including sand mined from other properties. *See* Am. Compl. ¶ 13. This was "a typical and usual clause to go in a sand mining lease agreement with the landowner on which the plant is to be located." *Id.* In preparing a document to be signed, McCabe (a non-lawyer) "used prior lease forms to piece together" the Lease; it consists of printed language with typed and handwritten insertions. *Id.* ¶ 14. The alleged intent of the Lease was to cover two types of property; it includes a heading, "Tract 1 Legal description" with a typewritten description of Lewis' 160 acres and a heading "Tract 2 Legal description" with a blank space, all of which is followed by printed language on the following page. *See* Lease at 1-2. This language is relevant to the parties' arguments regarding the scope of the Lease and will be set forth in the discussion, *infra*.

The Lease was executed by Lewis, McCabe, and Plaintiff and filed in Johnston County land records on February 17, 2005. Around this time, "there had been preliminary discussions with owners of adjacent and nearby properties but no leases or purchases had yet been made." *See* Am. Compl., ¶ 16. Plaintiff alleges the inclusion of a "Tract 2" in the Lease was intended to cover additional properties that might in the future "be leased or bought for the purpose of bringing sand to the plant to be processed and sold in the same way as the sand brought to the plant from the Sheila Lewis Tract 1." *Id.* ¶ 18. McCabe and Plaintiff allegedly agreed that each would reserve an overriding royalty of $0.30 per ton of all sand production when making an assignment of the Lease. *Id.* ¶ 15.

McCabe and Plaintiff in May 2005 executed an Assignment of Sand and Aggregate Mining Lease (hereafter, the "Assignment") to Folsom Quartz Sand L.L.C ("Folsom"), a limited liability company formed by McCabe.[4] The Assignment conveyed to Folsom all of McCabe's and Plaintiff's rights and interests under the Lease "covering the following described lands and mineral interest: [stating the legal description of Lewis' 160 acres] together with all the rights incident thereto, the personal property thereon, appurtenant thereto, or used or obtained in connection therewith (the 'Property')." See Assignment at 1. McCabe and Plaintiff reserved and excepted from the conveyance identical royalty interests, specifically as to each: "an overriding royalty interest of 30 [cents] per ton for whole grain commodity glass sand or aggregates for all silica sand or aggregates mined from the Property that is delivered or shipped to customers after processing, computed on scale weights . . . , payable in accordance with the provisions of Paragraph 3.C.(3) of the Lease." Id. at 2. At the time of the Assignment, "no other leases or purchases of adjacent or nearby properties had been made." See Am. Compl., ¶ 22.

In December 2006, Folsom assigned its rights under the Lease to FG Minerals. See Am. Compl. attach. 3 [Doc. No. 20-3] (hereafter, "Second Assignment"). The Second Assignment identified the property as "the following lands and mineral interest in Johnston County, Oklahoma: [stating a legal description of Lewis' 160-acre tract]." Id. at 1. In

---

[4] Like the Lease, Plaintiff provides only a partial copy of the Assignment as Exhibit B to his pleadings. See Compl. at 24-25 (ECF page numbering); Am. Compl. attach. 2 [Doc. No. 20-2]. But a complete copy appears multiple times in other attachments. See, e.g., Compl. at 38-40 (ECF page numbering); Am. Compl. attach. 3 [Doc. No. 20-3] at 13-15, attach. 13 [Doc. No. 20-13] at 25-27 & 41-43 (ECF page numbering). These copies will be cited collectively as "Assignment."

accepting the transfer, FG Minerals "agree[d] to assume and perform all of the covenants and obligations of Tenant pursuant to the Lease . . . including, but not limited to, the payment of the Lewis royalty, the Henry F. McCabe overriding royalty, and the Truey Duane Hicks overriding royalty." *Id.* at 2, ¶ 2.

The Second Assignment accompanied a written Management Services Agreement between Folsom and FG Minerals "concerning the development of a sand mining and processing operation to mine silica from the Property for use in a float glass plant." *Id.* at 1. According to Plaintiff, the Management Services Agreement "basically hir[ed] Henry McCabe and Verne McCabe through Folsom . . . to build the FG Minerals sand plant on the Sheila Lewis land." *See* Am. Compl. ¶ 26. After making the agreement, FG Minerals purchased adjoining and nearby tracts of land that allegedly "had been identified and tested by McCabe/Hicks and intended to be part of the Sand Plant operations . . . as described under Tract 2 of the . . . Lease." *Id.* ¶ 27.

The sand plant on Lewis' property was completed and operation began in 2009. Plaintiff alleges that sand was mined, processed, and sold from Lewis' property, and an adjoining tract that FG Minerals had purchased from Billy and Diana Nelson in 2007, beginning in 2010. *See id.* ¶ 29; *see also id.* Ex. E [Doc. No. 20-5]. Plaintiff includes information obtained from reports filed with the Oklahoma Department of Mines showing the tonnage of sand processed at the plant and royalty payments to Plaintiff. By calculating a $0.30 per ton royalty on the total tonnage, Plaintiff concludes that FG Minerals paid him royalties on all sand (not just sand mined from Lewis' property) from 2014 through January 2018. *See id.* ¶ 29. Royalty payments declined in February 2018 and ended in March 2018.

In 2018, a conveyor belt was built and began transporting large amounts of sand from adjoining properties to the Lewis plant, but Plaintiff received no royalty payments on that sand. *See id.* ¶ 35.

Plaintiff alleges that, as part of his agreement with McCabe, he assisted FG Minerals "to prove up by identifying, drilling, sampling, and/or testing the sands on adjacent and nearby properties" to the Lewis property and assisted in purchasing some of the additional tracts from nearby landowners whose land had the same type of glass sand, including the Nelson property and three other properties that FG Minerals purchased in 2016, 2017, and 2018. *See id.* ¶ 30, *see also* Exs. F, G, H [Doc. Nos. 20-6 to 20-8]. Plaintiff suggests that there existed, but does not identify, an agreement with FG Minerals that he would be paid a $0.30 per ton overriding royalty on sand produced from these lands as well. He alleges generally "it was agreed" with McCabe, Folsom, and FG Minerals that "the Hicks would assist in approaching some of the nearby landowners" and "assist in negotiating lease agreements as they had done with Sheila Lewis;" he refers only to the Lease (from Lewis) and the Assignment (to Folsom). *See id.* ¶¶ 30-31. Plaintiff alleges that his assistance to Folsom and FG Minerals was done "without any payment . . . but as part of the original agreement and operations done in order to earn the $0.30 per ton overriding royalty to be paid to Plaintiff." *Id.* ¶ 32. Similarly, Plaintiff admits he was not a party to any written agreements regarding FG Minerals' operations at the Lewis plant, but alleges FG Minerals did not pay for his "assistance because it had been understood and agreed that the additional testing and assistance were still part of the [services] to be performed pursuant to the earlier agreements and operations." *Id.* ¶ 33.

After this case was filed, Plaintiff learned of three amendments to the Lease executed by Lewis on various dates in 2017 and 2018 that were not recorded in Johnston County land records until June 6, 2019. The first amendment effective January 1, 2017, extended the term of the Lease and provided for monthly rental payments to Lewis in place of her production royalty, while acknowledging a continuing obligation to pay McCabe and Plaintiff for their overriding royalty interests. *See* Am. Compl., Ex. I [Doc. No. 20-9]. The second amendment effective June 1, 2018, altered the primary term of the lease and the amount of the monthly rental payments. *See* Am. Compl. Ex. J [Doc. No. 20-10]. The third amendment effective September 26, 2018, acknowledged that FG Minerals had purchased a 30-acre parcel of Lewis' property and removed that parcel from the property covered by the Lease. *See* Am. Compl. Ex. K [Doc. No. 20-11].

Plaintiff alleges that the purchase payment and monthly rental payments "were a sham and part of a scheme to stop making royalty payments to Plaintiff and [McCabe] at a later date." *See* Am. Compl. ¶ 41. Plaintiff believes FG Minerals and Lewis "entered into agreements and took actions . . . in derogation of [Plaintiff's] rights and specifically with the intent to . . . avoid paying Plaintiff the $.30 overriding royalty on sand processed at the plant . . . (which production has now begun in much larger quantities after the conveyor belt was built), but at the same time paying Sheila Lewis monies under the guise of rentals and sales in order to buy her cooperation and participation." *Id.* ¶ 42.

## Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted). All attachments to Plaintiff's pleading and documents central to his claims may properly be considered under Rule 12(b)(6). *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *see also Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Regis. Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

## Discussion

### A.   Breach of Contract

Plaintiff claims that FG Minerals' cessation of overriding royalty payments to him breaches a contractual duty arising from the Lease and the Assignments. He asserts that the Lease covers both Lewis' 160-acre tract and other tracts, and that the Assignment granted by him and McCabe retained an overriding royalty interest in "sand brought from other lands to be processed at the plant located on the Sheila Lewis land." *See* Am. Compl. ¶ 44. Plaintiff bases this claim on the language of the Lease, the alleged intent of the

original parties, and the manner in which FG Minerals allegedly interpreted and administered the Lease until March 2018. *See id.* ¶¶ 46-51.[5] Plaintiff also argues in his brief that his continued assistance to FG Minerals shows an understanding that his royalty interest would extend to other lands. *See* Pl.'s Resp. Br. at 10. However, Plaintiff does not identify any agreement between him and FG Minerals regarding additional properties, apart from the Lease. Plaintiff seeks as damages the amount of unpaid royalties that were allegedly due on all production from the processing plant after March 2018. *See id.* ¶ 51.

Under Oklahoma law, Plaintiff must establish the following essential elements to prevail on his breach of contract claim: a contract between the parties existed; the contract required certain payments to be made as alleged by Plaintiff; and FG Minerals breached the contract, and caused damages, by failing to make the payments. *See Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001) ("In order to recover on its breach of contract theory, [plaintiff] needed to prove: 1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach."); *accord Cates v. Integris Health, Inc.*, 412 P.3d 98, 103 (Okla.), *cert. denied*, 138 S. Ct. 2659 (2018).

Plaintiff constructs a contract with FG Minerals from the conveyance instruments: the Lease granted by Lewis; the Assignment executed by him and McCabe that reserved a royalty interest, that is, a right to receive overriding royalty payments; and the Second

---

[5] Plaintiff recognizes a possibility, however, that FG Minerals based his royalties on all production from the plant so long as sand from Lewis' property was being processed because "[a]s a practical matter, the sand and aggregate brought in from other lands . . . may well have been used in part for blending, meaning that the sand from other lands was mixed in with the sand from Tract 1 which can be done for different purposes to upgrade the end product to meet the requirements for different sand products, including glass sand." *See id.* ¶ 50.

Assignment received by FG Minerals that recognized the reservation of Plaintiff's royalty interest and preserved the right to payment. The crux of Plaintiff's position, however, hinges on the definition of "Property" in the Lease. Plaintiff argues that the inclusion of both a Tract 1 and a Tract 2 in this definition, and the reservation of an overriding royalty interest in the "Property," necessarily includes "other nearby or adjacent lands on which sand was mined and then brought to the Plant on Tract 1 for processing." *See* Pl.'s Resp. Br. at 8-9.

The parties agree that Oklahoma law governs this case and treats a lease as a contract for purposes of applying rules of construction and interpretation. The Oklahoma Statutes provide those rules. *See Kerr-McGee Corp. v. Admiral Ins. Co.* 905 P.2d 760, 763 (Okla. 1995). "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Okla. Stat. tit. 15, § 154. "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." *Id.* § 160. "If language of a contract is clear and free of ambiguity the court is to interpret it as a matter of law, giving effect to the mutual intent of the parties at the time of contracting." *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003) (footnotes omitted). The question of "[w]hether a contract is ambiguous and hence requires extrinsic evidence to clarify the doubt" is also a matter of law for the courts. *Id.*; *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991).

11

In this case, neither party contends there is any ambiguity in the definition of "Property" covered by the Lease. Although Plaintiff states that "the language of the Lease could certainly have been clearer," he maintains that "the plain language refers to both Tract 1 and Tract 2 and includes both by reference to the 'Property'" and clearly extends to other lands referred to in printed language of the Lease. *See* Pl.'s Resp. Br. at 7-8, 10. In contrast, FG Minerals asserts that "the only plausible reading of the Lease is that it covers the Property's 160 acres." *See* Mot. Dismiss at 7. The parties' disagreement does not make the Lease ambiguous. "A contract is ambiguous if it is reasonably susceptible to at least two different constructions." *Pitco Prod. Co.* 63 P.3d at 545-46 (footnote omitted).

Upon consideration, the Court finds that the Lease cannot reasonably be read to confer an interest in adjoining lands that Lewis did not own. The Lease states that "the Owner/Lessor [Lewis] hereby leases to McCabe/Hicks and to its successors and assigns as provided herein, the following described lands and mineral interest situated in Johnston County, Oklahoma." *See* Lease at 1. It then has a heading, "Tract 1 Legal description" with a typewritten description of Lewis' 160 acres, and a heading "Tract 2 Legal description" with a blank space, all of which is followed by this printed language:

> (sometimes referred to collectively herein as the "Property") for the purposes hereinafter described and with the exclusive right to prospect, mine and use said lands for the production, transportation, processing, storage, blending, sale and shipment of silica sand (including silica rock) and construction aggregates from the Property or any part thereof <u>and from other lands operated by McCabe-Hicks</u> and to do and place all things on, over, under and across the Property <u>or other lands</u> as in the judgment of McCabe-Hicks are necessary or appropriate for the same, including pipe, telephone and electric lines, roads, tracks, buildings, machinery, drilling rigs and other equipment, dumps, stock and waste piles, and one or more processing plants or facilities, subject to the following terms and provisions: . . . .

*See* Lease at 2 (emphasis addded). There is no legal description of a second tract, and Plaintiff's reliance on the above paragraph to cover an additional, undefined body of lands owned by adjacent landowners is illogical. The printed paragraph merely states the purposes for which the leased "Property" could be used. Also, Plaintiff does not explain how Lewis could possibly have conveyed a lease interest in real property owned by others.[6] Because there is no relevant ambiguity in the Lease, neither McCabe's intent when drafting the Lease (Am. Compl. ¶ 47) nor FG Minerals' course of conduct (*id.* ¶ 48) is appropriate for consideration.

In summary, Plaintiff bases his contractual claim and his right to payment solely on the Lease, which defines both the interest granted by Lewis and the interest received by him. In making the Assignment, Plaintiff could not have reserved for himself or created an interest greater than he originally received under the Lease. Therefore, as a matter of law, Plaintiff is not entitled to overriding royalty payments on sand mined from lands other than Lewis' 160 acres.

For these reasons, the Court finds that Plaintiff has failed to state a plausible breach of contract claim and that FG Minerals is entitled to the dismissal of this claim.

---

[6] As noted by FG Minerals, the Lease includes a "Warranty of Title" provision by which the lessor "expressly warrants and represents to McCabe-Hicks that [she] owns the percentage interest in the silica sand and silica rock or aggregates upon, within, and beneath the Property as set forth in the descriptions of Tracts 1 & 2 above." *See* Lease at 5, ¶ 4.D. Lewis could not warrant title to any land other than her own.

**B.     Civil Conspiracy**

Plaintiff asserts another claim against FG Minerals under a theory of recovery added in the Amended Complaint – civil conspiracy.[7] FG Minerals persuasively argues that this new legal theory lacks support. Plaintiff's Fourth Cause of Action for "Civil Conspiracy Against FG Minerals and Sheila Lewis" includes only conclusory allegations that they "combined together and worked in concert" and "unlawfully conspired" to deprive Plaintiff of overriding royalty payments. *See* Am. Comp. ¶¶ 63-65. Plaintiff presents in his pleading only "a formulaic recitation of the elements of a cause of action" and, therefore, fails to state a plausible claim. *See Iqbal*, 556 U.S. at 678. This deficiency alone justifies a dismissal under Rule 12(b)(6).

Further, "[t]he essential elements [of civil conspiracy] are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 175 (Okla. 2008) (internal quotation omitted). Plaintiff fails to identify factual allegations of his pleading that satisfy these elements and, thus, fails to show a conspiracy to commit a breach of contract, as argued in his brief. *See* Pl.'s Resp. Br. at 14. The Court also finds insufficient facts in the Amended Complaint to support a civil conspiracy claim, particularly an agreement between FG Minerals and

---

[7] At times, Plaintiff seems to argue that his fraud claim, asserted as his "Second Cause of Action against Defendant Lewis" (Am. Compl. at 37), is also directed at FG Minerals. But the First Amended Complaint cannot reasonably be read in that manner. Plaintiff claims only that "Defendant Lewis" withheld material information, had a duty to disclose the information to him, intentionally breached that duty, and caused injury as a result of her fraudulent conduct. *See* Am. Compl. ¶¶ 53-58. Plaintiff's pleading does not state a fraud claim against FG Minerals.

14

Lewis to breach a contract with Plaintiff. A conclusory allegation of agreement or an allegation of parallel conduct does not satisfy federal pleading requirements. *See Twombly*, 550 U.S. at 557 ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'").

Finally, aside from pleading defects, civil conspiracy is not an independent claim; "an underlying unlawful act is necessary." *Peterson v. Grisham*, 594 F.3d 723, 730 (10th Cir. 2010) (Oklahoma law); *see Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997) (as corrected Apr. 3, 1998) ("Unlike its criminal counterpart, civil conspiracy itself does not create liability. To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means."). Although the claim ordinarily sounds in tort, Plaintiff argues in his supporting brief that FG Minerals and Lewis conspired to deprive him of the overriding royalty payments due as a matter of contract, that is, that they conspired to commit the contractual breach. Because the breach of contract claim fails and must be dismissed, it cannot provide the basis of liability for a conspiracy claim.

For these reasons, the Court finds that Plaintiff has failed to state a civil conspiracy claim and that FG Minerals is entitled to the dismissal of this claim.

### Further Amendment

Plaintiff has thus failed in a second attempt to plead a plausible claim against FG Minerals. Some of these same pleading deficiencies were first raised by FG Minerals in a motion to dismiss Plaintiff's original Complaint, and FG Minerals argued that any amendment would be futile. *See* Def.'s Mot. Dismiss [Doc. No. 7] at 6-10, 12. Plaintiff

responded, in part, by amending his Complaint. Under these circumstances, where one must assume Plaintiff gave the current pleading his best effort, the Court finds that any further opportunity to amend would be futile. Also, because Plaintiff has made no request to amend nor filed a motion that complies with Fed. R. Civ. P. 15(a)(2) and LCvR 7.1(k), the Court finds that further leave to amend is not warranted. *See Burnett v. Mortgage Electronic Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013) ("Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave."); *accord Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010); *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186-87 (10th Cir. 1999). Therefore, the Court finds that the dismissal of Plaintiff's action against FG Minerals should be with prejudice to further amendment.

## Conclusion

For these reasons, the Court finds that Plaintiff has failed to state any plausible claim against FG Minerals and that his action against FG Minerals should be dismissed with prejudice to a future filing.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss First Amended Complaint [Doc. No. 21] is GRANTED. Plaintiff's action against Defendant FG Minerals is DISMISSED, and a separate judgment shall be entered.

IT IS SO ORDERED this 15th day of July, 2020.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE